In ascertaining the true construction of the act, it is necessary to take into view some others which have been made relative to the same subject. The whole are founded on a principle of severe *Page 239 
policy, absolutely necessary to guard society against the evil consequences resulting from the condition of slavery. Where some offenses had been previously provided against in an act passed the same session, one perhaps at the time of frequent occurrence, in the nature of a conspiracy by three or more to rebel or murder, is by this act made punishable with death; the next clause requires that upon a slave being convicted of any other crime or misdemeanor, such judgment shall be past, according to the discretion of the Court, as the nature of the crime shall require. These expressions do, in my opinion give the Court a power to inflict any punishment upon any crime or misdemeanor where a specific punishment had not been previously directed by law. In such cases the prescribed punishment must be inflicted, but in all others the Court are to regulate their discretion by the nature of the crime. This will depend upon their frequency, enormity, the temptation to commit (282) them, the necessity of an example, and a variety of other circumstances that ought, in a peculiar manner, to be considered in estimating the offenses of these persons.
It certainly could not be the intent of the Legislature that they should be punished according to the ordinary penal code, for then it were necessary to have gone further than a simple regulation of the trial, and not to have said anything about the punishment; and because by the former act the offense of stealing certain property is punishable with whipping and the pillory; whereas, stealing money would only be punished by burning in the hand. This is a discrimination in favor of an offense of equal magnitude, which I do not think the Legislature intended to make. The Act of 1786, Iredell's Revisal, page 588, does in the preamble recognize the fact that many persons by cruel treatment to their slaves, cause them to commit crimes for which they are executed. It then proceeds to take away the allowance which had been theretofore made to the owners of such slaves.
The cruel treatment here alluded to must consist in withholding from them the necessaries of life, and the crimes thence resulting are such as are calculated to furnish them with food and raiment. It then appears that, in 1786, the Legislature was perfectly aware that from 1741 until that time it had been the practice to execute slaves upon a conviction of grand larceny, when free persons were only burned in the hand, and they have not declared that this is a false exposition of the law. It seems to me that the acts subsequently made had no other end than to extend to them the trial by jury and to ascertain the respective provinces of the Court and the jury, still leaving the discretion of the former as to the punishment unlimited, as the first act had made it. *Page 240 
I am sensible that the law is a harsh one, and I fear that abuses have been committed under it; but these may be controlled by the Legislature whenever they think fit to interpose. Thinking as I do, from the short time I have had to deliberate on this case, that their intention is (283) free from doubt, a sense of duty compels me to pronounce it, however repugnant it may be to my private notions of humanity.